IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jeffrey J. Christoff, et al.,                          Case No. 3:09CV540

         Plaintiffs

       v.                                                         ORDER

Ohio Northern University Employee Benefit Plan, et al.,,

         Defendants

       Jeffrey Christoff and K.C., a minor (plaintiffs), bring suit against the Ohio Northern University Employee Benefit Plan, Employee Benefits Management Corporation (EBMC), and Alternative Care Management Systems, Inc. (ACMS) for denying K.C. benefits under the Plan. Plaintiffs seek recovery under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3).

       Jurisdiction exists under 28 U.S.C. § 1331.

       Pending are the parties' counter-motions for summary judgment [Docs. 14, 16]. For the reasons discussed below, defendants' motion for summary judgment [Doc. 14] is granted in part and denied in part, plaintiffs' motion for summary judgment [Doc. 16] is denied, and the case is remanded to the Plan Administrator for further proceedings consistent with this opinion.

**Background**

Jeffrey Christoff is an Ohio Northern University employee, and K.C. is Christoff's dependent. The parties do not dispute that the Plan generally covers K.C. In 2006, Dr. Sacks, K.C.'s treating physician, diagnosed K.C. with Attention Deficit Hyperactivity Disorder, and subsequently changed K.C.'s diagnosis to include Cognitive Disorder Not Otherwise Specified.

From 2006 to 2008, the Plan paid for K.C.'s treatment under four discrete, identical claims. In 2008, the Claim Administrator denied K.C.'s fifth claim under the Plan. The Claim Administrator, EBMC, stated that it determined K.C.'s treatment was "educational," not "medically necessary," and thus not covered by the Plan. The Plan, specifically, does not cover "[a]ny charges in connection with any treatment, therapy, teaching technique or program for remedial education or habilitative training  . . . " [AR-0783].

Dr. Christoff, on behalf of K.C., appealed the initial denial to EBMC. EBMC then employed a reviewer, ACMS, to assist with the claim. ACMS issued an opinion, suggesting EBMC deny coverage because the treatment did not fall within the Plan language. EBMC, accordingly, upheld the denial of the claim.

Christoff again appealed. EBMC handled the second appeal, and after further consideration, again denied Christoff's claim. Christoff appealed for a third time, and three University trustees reviewed the appeal. The trustees enlisted the Medical Review Institute of America, Inc. [MRIOA] to review the claim independently and determine whether the Plan covered the requested treatment. Despite communication problems, MRIOA eventually issued its opinion to the trustees, stating that based on the information it was given, the requested treatment did not fall within the Plan language.

On Christoff's request, the trustees sought another independent review by the HHC Group [HHC]. HHC also recommended denying K.C.'s claim as outside the Plan's language. The trustees then upheld EBMC's finding that the Plan did not cover K.C.'s claim.

## Standard of Review

A party is entitled to summary judgment under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id*. at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

### A. Standard of Review for ERISA Claims

3

I review claims for denial of employee benefits challenged under 29 U.S.C. § 1132(a)(1)(B) *de novo* unless the Plan vests an administrator or fiduciary discretionary the authority to determine eligibility or interpret the terms of the Plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Williams v. International Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). When a plan expressly vests an administrator discretionary authority, I review his interpretation of plan language and decisions regarding benefits under the highly deferential "arbitrary and capricious" standard of review. *Firestone*, *supra*, 489 U.S. at 115; *Williams*, *supra*, 227 F.3d at 711.

To deserve deference, however, the administrator must actually exercise his discretionary authority. *Shelby County Health Care Corp. v. Majestic Star Casino, LLC Group Health Benefit Plan*, 581 F.3d 355, 365 (6th Cir. 2009) (citing *Sanford v. Harvard Indus.*, 262 F.3d 590, 597 (6th Cir. 2001)). If an entity other than the administrator decides the benefits claim, I must review the denial *de novo*. *Id*.

To deserve deference, therefore, two requirements must be met: 1) the Plan must expressly vest discretionary authority in an administrator; and 2) the administrator must actually exercise that discretion. *Shelby*, *supra*, 581 F.3d at 365. In determining whether the administrator exercised his discretionary authority, I analyze Plan language to determine the entity it appoints the administrator.

The Ohio Northern University Plan meets the first requirement. The Summary Plan Description (SPD) contains the following language:

> 3.5 Decisions are Final and Binding. The Plan Administrator is hereby granted discretionary authority to interpret and construe the terms of the Plan and to decide disputed claims in accordance with provisions of this plan. The interpretations, determinations and decisions of the Plan Administrator shall be final and binding upon all persons with respect to any right, benefit, or privilege hereunder. Except as otherwise provided by law, the review procedure set forth in the SPD shall be the sole and exclusive remedy.

[AR-0802].

SPD section 2.2(f) also reads, in pertinent part:

> 2.2 Responsibilities of the Plan Administrator. The Plan Administrator shall have the authority and responsibility for:
>   . . .
> f) interpreting this Plan's provisions relating to benefits, except where determination from the Claims Administrator concerning a coverage question is requested.

[AR-0801].

The SPD, in addition, vests the Claims Administrator with the task of initially deciding claims:

> 3.2. Claims Administrator. The Claims Administrator shall determine the covered status of claims for benefits submitted in accordance with standards for such claims. The Claims Administrator may refer to and make use of the rules of claim determination stated in a Procedures Manual, as from time to time amended, which is hereby incorporated in this Plan by reference.

[AR-0802].

In sum, § 3.2 establishes the Claim Administrator as the initial claim decisionmaker. Section 3.5 vests the Plan Administrator with authority to interpret the plan and decide disputed claims. A claim, however, only becomes disputed when the Claim Administrator denies the initial claim. Section 2.2 reiterates that the Plan Administrator retains authority to interpret the Plan, except on initial coverage questions. Read together, these sections establish the claim review procedure: initial determinations are made by the Claim Administrator and appeals and final decisions are made by the Plan Administrator.

To deserve deference, the Plan Administrator must actually exercise its discretionary authority. I must, therefore, determine which entity the Plan designates as the Plan Administrator. The SPD contains conflicting language on this point. ERISA requires plans to provide beneficiaries

with "the name and address of the administrator . . . [and the] names, titles and addresses of any trustee or trustees." 29 U.S.C. § 1022(b). The SPD's ERISA disclosure contains the first set of language.

In its ERISA disclosure, the SPD appears to designate the Vice President for Financial Affairs the Plan Administrator:

**GENERAL INFORMATION**
(Required Under the Terms of the Employee
Retirement Income Security Act of 1974 - ERISA)
. . .
**PLAN ADMINISTRATION/AGENT FOR SERVICE OF LEGAL PROCESS**
Vice President for Financial Affairs

[AR-0890].

A Plan amendment, in a separate section, reiterates that Plan Administrator is the Plan's agent for service of legal process. [AR-0801].

The SPD, however, also contains the following in its definitions section:

**TRUSTEES**
Trustees are three (3) individuals appointed by the Company to administer the
Plan and the Trust.

[AR-0885].

I must, therefore, determine whether the Plan, through the SPD, designates as Plan Administrator the Vice President for Financial Affairs or the trustees.

For several reasons I find the Vice President for Financial Affairs to be the designated Plan Administrator. First, ERISA requires disclosure of the Plan Administrator, and the SPD's disclosure identifies the Vice President of Financial Affairs the Plan Administrator. The Plan's designated ERISA disclosure section should clearly indicate that entity's identity.

The purpose of the disclosure requirement is to provide beneficiaries a central place to find important Plan information on which they may rely. Holding that a separate section vests an entity with contrary authority would undermine this purpose. *See Haus v. Bechtel Jacobs Co., LLC*, 491 F.3d 557, 565 (6th Cir. 2007) ("When an employer distributes a document that purports to summarize an employee's benefit information, a lay beneficiary should logically be able to rely on that summary rather than combing through the often nearly incomprehensible plan itself.").

Second, specific contract terms are given more weight than general terms. *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 420 (6th Cir. 2008) (citing Restat. 2d of Contracts, § 203). Here, the definitions section broadly states that the trustees administer the Plan and trust, but does not name the trustees or specifically state they are the Plan Administrator. *See*, *Section II b.*, *supra*.

The ERISA disclosure section, in contrast, specifically names the Vice President of Financial Affairs the Plan Administrator. The ERISA disclosure section, therefore, should trump the contrary general language in the definitions section of the SPD.

Finally, the two sections create at least an ambiguity because, read together, they could arguably lead to two reasonable interpretations. *See Zirnhelt v. Mich. Consol. Gas Co.*, 526 F.3d 282, 287 (6th Cir. 2008). In construing Plan language, I resolve ambiguities in favor of the non-drafting party, plaintiffs. *See Regents of the Univ. of Mich. v. Employees of Agency Rent-A-Car Hosp. Ass'n*, 122 F.3d 336, 340 (6th Cir. 1997)). In short, the purpose of the sections in which the language is found, their specificity, and general rules of contract construction all favor finding the Vice President of Financial Affairs the Plan Administrator.

According to the record, the trustees decided K.C.'s claim. [AR-0360; AR-0422; AR-0568; AR-0617; AR-0620; AR-0734]. Although the named Plan Administrator, the Vice President, wrote Dr. Christoff denying the claim, the Vice President specifically stated in his letters that the trustees made the determination. [*Id*.]. Defendant, in its motion for summary judgment, acknowledged the trustees made the ultimate decision to deny K.C.'s claim. [Doc. 14, at 12]. Defendant also recognized that the Vice President merely relayed the decision to Dr. Christoff. [*Id*. at 12-13].

Although the Plan Administrator retains the power to delegate its responsibilities, [AR-0801], it does not appear he did so here.

Looking, as I must, solely to the administrative record, *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 615 (6th Cir. 1998), the Vice President of Financial Affairs, serving as Plan administrator, did not decide the final claim dispute as required for the deferential "arbitrary and capricious" review. I therefore review the claim denial *de novo*.

### B. Procedural Flaws in Decision-Making Process

I review the Plan Administrator's denial of benefits under the *de novo* standard of review to determine whether he made the correct decision. *Hoover v. Provident Life Accidents Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002) (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir. 1990)). I give the Plan Administrator's decision no deference, but I restrict my review to the administrative record. *Id.* Based on the record, I determine if the Plan Administrator correctly interpreted the Plan, or whether the beneficiary should have been given benefits under the Plan. *Id.*

If I determine that the Plan Administrator erroneously denied K.C. benefits, I may either retroactively award benefits or remand to the Plan Administrator for a new evaluation. *Shelby*, *supra*, 581 F.3d at 373 (citing *Elliot v. Metro Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006)). When

the problem is the integrity of the Plan's decisionmaking process, and not that the administrator denied a beneficiary benefits to which he was clearly entitled, I should remand. *Id.*

Remand is appropriate when an Administrator's decision "suffers from a procedural defect or the administrative record is factually incomplete." *Id.* (quoting *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 240 (4th Cir. 2008)). Only where "there was no evidence in the record to support a termination or denial of benefits" is a benefits award an appropriate remedy. *Id.* (citing *Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 396 (6th Cir. 2009)).

Based on the record, I cannot conclude the Plan Administrator denied K.C. benefits to which he was clearly entitled. The record contains extensive medical evidence, some inconclusive, some incomplete, but most favoring the denial of benefits for K.C. Plaintiffs argue at length that the medical evidence was incomplete and medically incorrect. I cannot, however, conclude from the record that, even with complete evaluations, K.C. would have clearly been entitled to coverage.

The heart of the problem is with the Plan Administrator's management of the decisionmaking process. The process contained two main flaws. First, as discussed above, the Plan names the Vice President of Financial Affairs the Plan Administrator, but the university trustees made the final claims decision.

Second, EBMC, ACMS, and the Vice President did not strictly follow the claim appeals procedure. Specifically, according to Plan language, EBMC and ACMS should not have reviewed the claim appeal after the initial denial because the Plan vests that authority in the Plan Administrator. *See*, *Section II b.*, *supra*. Although I cannot state for certain the Plan did not correctly deny K.C. benefits, the procedural flaws alone are sufficient to render the decision unsustainable.

9

*See Shelby*, *supra*, 581 F.3d at 373 (citing *Gagliano*, *supra*, 547 F.3d at 240 (failure to comply with ERISA's appeal notice requirements sufficient to justify remand)).

Because the defendants' actions undermined the integrity of the decisionmaking process, and the mistakes were procedural, I remand K.C.'s claim for Plan benefits to the Plan Administrator for a full and fair review consistent with the terms of the Plan.

### C. Plaintiffs May Not Seek Relief Under Both 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3)

Plaintiffs bring two claims under 29 U.S.C. § 1132. They bring the first under **§** 1132(a)(1)(B), which authorizes claimants to recover benefits. As discussed above, I remand that claim to the Plan Administrator. Plaintiffs bring the second claim under **§** 1132(a)(3), the section's "catchall provision." *Varity Corporation v. Howe*, 516 U.S. 489, 512 (1996).

29 U.S.C. § 1132 provides, in relevant part:

> (a)Persons empowered to bring a civil action
>
> A civil action may be brought--
>
> (1) by a participant or beneficiary. . .
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . .
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan.

Subsection 1132(a)(3) applies only to beneficiaries who have no other remedy under § 1132. *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 615 (6th Cir. 1998) (discussing *Varity*, *supra*, 516 U.S. at 516). Because § 1132(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims," and that section

10

allows plaintiffs to seek all necessary relief, including wrongfully denied benefits and future clarification of rights, they may not seek duplicative relief under § 1132(a)(3). *Varity*, *supra*, 516 U.S. at 512.

I therefore dismiss plaintiffs' § 1132(a)(3) claim.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

1. Defendants' motion for summary judgment (Doc. 14) be, and the same hereby is granted in part and denied in part;

2. Plaintiffs' counter-motion for summary judgment (Doc. 16) be, and the same hereby is denied; and

3. This case be, and the same hereby is remanded to the Plan Administrator for further proceedings in accordance with this opinion.

The Clerk shall enter judgment accordingly.

So ordered.

/s/ James G. Carr
James G. Carr
Chief Judge