IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jeffrey J. Christoff, *et al.*,	Case No. 3:09CV540

        Plaintiffs

    v.	**ORDER**

Ohio Northern University
        Employee Benefit Plan,

        Defendant

This is a suit by a employee ERISA welfare plan beneficiary and his dependent against the plan. Plaintiffs Jeffrey J. Christoff and K.C., his dependant, seek reversal of a decision by the Plan Administrator[1] refusing to: 1) provide neuropsychological testing of; and 2) continue treatment for K.C. Pending are cross-motions for summary judgment. [Docs. 55, 58].

For the reasons that follow, I grant the defendant's motion and deny the plaintiffs' motion.

**Background**

---

[1] In an earlier decision, I remanded this case for further review because the Plan Trustees, rather than the Plan Administrator, had made the decision to deny benefits. *Christoff v. Ohio Northern Univ. Employee Benefit Plan*, 2010 WL 2246336 (N.D. Ohio).

Plaintiffs challenge two decisions rejecting the application for benefits. The first was a denial of Jeffrey Christoff's appeal of the decision to discontinue cognitive rehabilitation for K.C. The second was the rejection of a request by Dr. Fred Sacks, K.C.'s treating physician, for ten hours of neuropsychological testing.

In 2006, Dr. Sacks had diagnosed K.C. as having Attention Deficit Hyperactivity Disorder (ADHD). He later defined the child's condition as "Cognitive Disorder Not Otherwise Specified." (CD/NOS). Plaintiffs sought coverage for individual therapy sessions, including cognitive training and psychological testing, with Dr. Sacks.

The outside firm which the Plan uses for pre-certification and utilization review, Alternative Care Management Systems, Inc. (ACMS), approved plaintiffs' request to cover the sessions with Dr. Sacks for the period June 6, 2006 through December 31, 2007.

Among other limitations on the right to receive benefits, the plan provides that benefits are not available for treatments or services that are "educational"—*i.e.*, "any treatment, therapy, teaching technique or program for remedial education or habilitative training, which is principally intended to overcome, compensate for or improve any non-organic learning impairment."

ACMS reviewed the request for continued cognitive training in January 2008, following expiration of the initial benefit/treatment period. The review's focus was whether K.C. had made progress during his treatment with Dr. Sacks.

Dr. Brezny, a family practitioner and reviewer for ACMS, recommended denial of continued cognitive training. Dr. Brezny reported:

> [K.C.] has shown very little progress despite the cognitive treatment that occurred over the past year. It appears from the chart notes that the patient has a chronic

condition that will require long-term treatment as well as educational modalities. Many of the patient's treatments and training should be covered by county or state programs within the school system. The current treatment plan appears to be educational in nature and for maintenance of current function rather than for restoration of a deficit.[2]

In light of this assessment, ACMS denied the claim for continued cognitive training. On January 17, 2008, ACMS notified plaintiff that "[t]he current treatment plan appears to be educational in nature and for maintenance of a current function rather than restoration of a deficit" and thus not covered by the Plan.

On February 26, 2008, plaintiffs filed an appeal with ACMS, asking for restoration of weekly sessions effective January 21, 2008. Plaintiffs also asked for an updated neuropsychological evaluation. Plaintiffs stated K.C. had shown progress from his treatment with Dr. Sacks. Plaintiffs disputed the conclusion that the treatment was educational.

On receipt of plaintiffs' appeal, ACMS retained Prest and Associates (Prest) to review its denial of plaintiffs' claim.

The reviewer for Prest, Dr. David Reid, a licensed clinical psychologist, reported that cognitive training is not a standard of care for ADHD. Like Dr. Brezny, Dr. Reid viewed cognitive training as educational, not medically necessary, and not covered by the Plan.

Next, the Plan's claims administrator, Employee Benefits Management Corporation (EBMC), reviewed plaintiffs' appeal. The administrator affirmed the decision to discontinue benefits because "cognitive rehabilitation" fails to meet the criteria for medical necessity.

On May 6, 2008, Dr. Sacks sought approval from ACMS for ten hours of neuropsychological testing, which had previously been approved in conjunction with K.C.'s

---

[2] The school system has declined to provide services to K.C..

rehabilitative training. ACMS asked Dr. Reid to review the request. Dr. Reid recommended denial because "specific information concerning the proposed tests and rationale behind these tests was not provided by the provider." Dr. Sacks had failed to specify the tests he want to give to K.C.. Without this information, Dr. Reid could not recommend approving the request.

ACMS sent a letter to Dr. Sacks denying the request on the basis that "[s]pecific information concerning the proposed tests and the rationale behind these tests was not provided. ACMS sent a follow-up letter to Dr. Sacks specifying the information needed for further review. This information was not forthcoming.[3]

---

[3] Plaintiffs point to statements by some reviewers as supportive of their contentions, including the July 2008 responses of Liz Caranna, RN, to two questions:

> Question 2: Does cognitive treatment meet Plan language?
> Yes. Cognitive skills retraining (cognitive treatment) for identified neuropsychological and neurophysiological deficits associated with an identified organic brain deficiency and or injury (e.g. following a CVA or TBI) would be medically beneficial, a covered benefit, and meets plan language.
>
> Question 5: Does neuro-psych testing meet Plan language?
> This question cannot be answered due to the incomplete documentation that was submitted. The plan does cover medically necessary and health beneficial NPT.

These answers are not helpful to plaintiff. The answer to Question 2 is simply that the plan covers treatment "associated with an identified organic brain deficiency and or injury." There is no evidence that such deficiency or injury caused K.C.'s condition. The answer to Question 5 simply states that sufficient support for neuropsychological testing has not been submitted.

In September, 2008, another reviewer, Margaret E. O'Neill, Ph.D., observed that additional information:

> will be useful for purposes of monitoring progress and guiding direction of treatment. Given the previous neuro-psych testing, interval treatment, interval timeframe of two years, and an interest to utilize the requested neuro-psych testing to modify the existing treatment plan, the requested 10 hours of neuro-psych testing is medically necessary and appropriate. Subsequent testing could be repeated at three-year intervals.

Plaintiffs next appealed the decisions to deny cognitive training and neuropsychological testing to the University Health Services Trustees, who, they believed, served as the Plan Administrator *vis-a-vis* appeals.[4]

Before the Trustees considered the appeal, Medical Review Institute of America, Inc. (MRIoA), another outside review organization reviewed whether cognitive training and additional neuropsychological testing should be approved under the Plan. MRIoA attempted to contact Dr. Sacks for a phone consultation and to request additional documentation. It was unable to reach Dr. Sacks.

MRIoA's physician reviewer, a licensed clinical psychologist with experience with clinical neuropsychology, concluded, based on the information submitted to him, that cognitive training and neuropsychological testing were not medically necessary.

Thereafter, the Trustees concluded that the appeal should be denied "due to missing information." The letter of notification to plaintiff stated that "certain requested documentation has not been provided. The trustees will revisit this claim if the additional, specific information is received."

---

Plaintiff's reliance on this favorable response overlooks the fact that additional information from Dr. Sacks was a predicate to finding such testing was medically necessary.

In October 2010, another reviewer determined

> Neuropsychological testing is covered under Plan language for neurologically complicated ADHD.

The record does not show that K.C.'s ADHD was "neurologically complicated."

[4] Christoff assumed that the Trustees were authorized to act as the Plan Administrator in regard to appeals. In my earlier decision, *Christoff, supra,* 2010 WL 2246336, *4, I concluded that the Vice President of Financial Affairs was the proper Plan Administrator.

Christoff, through Dr. Sacks, subsequently submitted additional information to ACMS. The Plan then sent the appeal to MRIoA for further review. Christoff requested that the MRIoA reviewer speak with Dr. Sacks directly, in conjunction with the review of the claim. Although the Plan does not require such phone contact, the MRIoA reviewer tried to contact Dr. Sacks. Not being successful, the MRIoA reviewer placed the review on hold.

While this review was pending, plaintiff asked for an independent review from an organization other than MRIoA. Though given the opportunity to select the reviewing organization, Christoff declined to make a selection. Therefore, the case was submitted to the HHC Group (HHC).

Thereafter, MRIoA issued a final report denying cognitive training and neuropsychological testing, based on additional information Dr. Sacks had provided. The reviewer, a licensed psychologist with post-doctorate training in neuropsychology, reported:

> (1) There appear[s] to be little medical evidence that the child has brain damage, although he does reportedly have an auditory processing delay as per the audiology report; (2) there is no significant functional impairment in that the child appears to be doing well in school, [meet] developmental milestones age appropriately, and has an overall I.Q. of 81 with consistent index scores; (3) The positive findings of "severely impaired in brain functioning" on the Halstead-Reitan Neuropsychological Test Battery is inconsistent with findings on the other measures and is not consistent with the overall relatively intact functioning of this child in school and should be interpreted with great caution; (4) Cognitive retraining is not considered standard of care for individuals with ADHD, nor for individuals with Cognitive Disorder NOS. The child's deficit appears to be developmental and not acquired; (5) the child has made limited progress over the course of the past year as reflected in several notes. GAF is not a reliable measure of specific impairment or specific progress.

The reviewer thus concluded that neither cognitive training nor neuropsychological testing were medically necessary or met Plan language.

HHC subsequently also recommended denial of cognitive training and neuropsychological testing. The reviewer, Dr. Margaret E. O'Neill, a licensed psychologist, stated cognitive training was not medically necessary because it is not considered a standard of care of ADHD or Cognitive Disorder NOS. Dr. O'Neill's conclusion was based in part on her conclusion that, though in some instances neuropsychological testing may be medically necessary and appropriate, this specific claim did not meet Plan language. "In the absence of cognitive treatment meeting Plan language, it also follows that the neuro-psych [sic] testing does not meet Plan language."

After receiving the HHC review, the Trustees advised EBMC to send a letter to plaintiff telling him of HHC's recommendation and upholding the denial of the claim.

Thereafter, plaintiff submitted a "supplemental appeal," again seeking restoration of weekly sessions and updated neuropsychological evaluation. In this appeal, plaintiff stated ACMS had not afforded his claims "full and fair review."

Plaintiff's principal objection was the lack of contact between the MRIoA physician reviewers and Dr. Sacks.[5] Following further review of the plaintiff's claims, the Plan Trustees rejected plaintiff's supplemental appeal on the basis that cognitive training and neuropsychological testing were not covered by the Plan.

Plaintiff thereafter brought this suit. Finding, as noted, that the Plan Administrator was a Vice President, not the Trustees, I remanded for review of the appeal by the Vice President.

---

[5] The Plan does not mandate contact between reviewers and treating physicians, and review can occur, as it did here, on the basis of a review of the file.

Before that review, the Plan, through counsel, asked plaintiffs to provide any additional materials they wanted the Plan to consider. The additional materials submitted in response to that request did not include additional notes or reports from K.C.'s treating physician.

The Plan also engaged MCMC, another outside review organization, to conduct a further review. Dr. Yolanda P. Graham, board certified in psychiatry and neurology for children and adolescents, concluded: (1) cognitive treatment is not necessary; (2) cognitive treatment does not meet the Plan's language; and (3) ten hours of neuropsychological testing is not medical necessary or appropriate. She stated that "cognitive retraining exercises were habilitative in nature and no evidence of an organic impairment was noted in the patient upon evaluation by a pediatric neurologist." She also noted that neuropsychological testing was medically unnecessary. She concluded that what plaintiffs sought was not medically necessary.

Following this review, the Plan Administrator considered the administrative record, additional materials received from plaintiffs' counsel, and the MCMC review. He affirmed the denial of benefits and notified plaintiffs of his decision.

Remand having been accomplished, this case has been reopened.

### Discussion

Seeking reversal of the Plan Administrator's denial of benefits, plaintiffs claim:

- Though the Plan gives discretion to the Plan Administrator (under which review here is based on an arbitrary and capricious standard), nonetheless *de novo*, rather than an arbitrary and capricious, review is proper in this case;

- The Plan Administrator's decision was not the result of a "principled reasoning process and supported by substantial evidence";

- A conflict of interest tainted the decision-making process;

- Reviewers were not independent and thus were biased against plaintiffs and their claims;

- Reviewers failed either to solicit or obtain supplemental information from Dr. Sacks;

- Reviewers and decision-makers only conducted a file review.

### A. Standard of Review

As plaintiffs acknowledge, the general rule is that, where a plan gives the plan administrator discretionary authority to interpret plan provisions and determine eligibility for benefits, the administrator's decision is subject to an "arbitrary and capricious" standard of review. *E.g., Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005). This requires affirmance of an administrator's decision "if it is the result of a deliberate, principled reasoning process, and if it is supported by substantial evidence."*E.g., Baker v. United Mine Workers of Am. Health and Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). During my review of a decision, I am to "review the quality and quantity of the medical evidence and the opinions on both sides of the issues." *E.g., McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2004).

Plaintiffs claim I should review the plan administrator's decision on a *de novo*, rather than use the arbitrary and capricious standard. *See Shelby County Health Care Corp. v. Majestic Star Casino, LLC Group Health Benefit Plan*, 581 F.3d 355, 365 (6th Cir. 2009) (administrator must actually exercise discretion and cannot delegate decision to others). Plaintiff argues that *de novo* review is proper because, following remand for the plan administrator, rather than the trustees, to make the final decision, the plan administrator relied on the same record that had been before the trustees.

This does not matter. The record was the record. Plaintiff points to no legal basis for his argument that somehow a lack of additional information tainted the plan administrator's review. Review in this case is on the arbitrary and capricious standard.

### B. The Decision to Deny Benefits Was Not Arbitrary or Capricious

#### 1. Conflict of Interest

Plaintiffs argue principally that the adverse decision resulted from the plan's desire to no longer pay for K.C.'s treatment or provide supplemental testing. This putative desire reflected, according to plaintiff, an intent to reduce its self-insured medical expenses. As a result of this intent, plaintiffs assert, a conflict of interest fatally compromised the integrity of the decision-making process.

I disagree.

First, plaintiffs offer no support for this conclusory attribution of a cost-savings intent on the part of the plan. Absent "'significant evidence' that [a] conflict actually affected or motivated the decision at issue," a claim of conflict must fail. *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007) (citing *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998)).

Second as a matter of law, a conflict of interest exists when the entity that administers an ERISA plan, such as an insurance company, both determines eligibility and pays benefits from its own funds. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). Here, the Ohio Northern University Employee Benefits Trust—not the University or plan administrator—pays the benefits. There is, accordingly, no direct financial impact on either the University or Plan.

#### 2. Plan Selection of Reviewers Did Not Engender Bias

To the extent that plaintiffs argue that the plan's selection of outside reviewers engendered bias, they also err. Absent evidence that the chosen reviewer has a history or pattern of recommending rejection of claims, it is not improper for the plan to select reviewers who otherwise have no connection with the plan. Here, as in *Kalish v. Liberty Mutual/Liberty Life Assur. Co.*, 419 F.3d 501, 508 (6th Cir. 2005), plaintiffs have "offered only conclusory allegations of bias with regard to [the independent reviewer]" and "failed to present any statistical evidence to suggest that, when retained by [defendant], [the independent reviewer] has consistently opined that claimants are not disabled."

### 3. Review Was Not Incomplete

Plaintiffs complain that the process of reviewing their claim was imperfect and improper because the reviewers and plan administrator relied on records from Dr. Sacks and opinions of the outside reviewers, without obtaining further information from Dr. Sacks before making a final determination.

While plaintiffs complain about the timing of requests to Dr. Sacks and plan's failure to wait until he responded, I find no deficiency in either regard. The plan made several attempts to get information from Dr. Sacks, and he failed to respond in a timely manner to those requests. Indeed, when Dr. Moss asked Dr. Sacks whether he desired to provide further information, Dr. Sacks stated he did not think that that was necessary. In any event, failing to wait for a medical provider's response to requests for supplemental information does not make the review process or the result it reaches arbitrary and capricious.

### 4. The Review Process Was Appropriate

Plaintiffs complain that the denial of their claim was arbitrary and capricious because reviewers conducted a paper or file review.

As plaintiffs acknowledge, there is nothing inherently improper in basing a decision solely on review of K.C.'s medical records and opinions of outside reviewers, as occurred here. This is not a case, *see Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292, 297 n.6 (6th Cir. 2005), involving assessments of credibility.

Plaintiffs also claim that the reviewers were biased. But they fail to present evidence to support this claim, or otherwise to show that bias on the part of any reviewer tainted the outcome.

That later reviewers had the opinions of earlier reviewers is not, contrary to plaintiffs' contention, evidence of bias. It is, rather, as plaintiffs acknowledge, "standard operating procedure." (Doc. 58 at 24). Plaintiffs, moreover, provide no case law support for the claim that bias results from providing the complete file, including previous reviews, to successive outside reviewers.

Moreover, even if, as plaintiffs claim, the initial reviewer, Dr. Brezny, was not qualified to evaluate the claim, inclusion of his assessment in the file did not mar the process. Plaintiffs do not suggest that subsequent reviewers were unqualified, or show how, despite their superior qualifications, they would, in lieu of exercising their own expertise, have abided by any deficiencies in or have willy-nilly adopted Dr. Brezny's assessment.[6]

---

[6] Contrary to plaintiffs' claim that the parties agreed to "terminate" the second MRIoA review, the record shows the parties agreed to an additional independent review while the MRIoA review was pending.

Specialists in clinical psychology, Dr. Reid, the MRIoA reviewer, and Dr. O'Neill, conducted separate medical reviews. On consideration of all materials in the file, including documents submitted by plaintiffs, and found no medical necessity for continuing K.C.'s treatment. There is no support in the record for plaintiffs' claim of bias on the part of these reviewers. Mere selection and payment by the plan, without more, does not suffice to show they were biased.

The final review, by Dr. Graham, confirmed the lack of an organic or traumatic basis for K.C.'s condition.

There is, finally, no evidentiary basis for finding that the plan administrator was biased when, following remand, he conducted his review of the file. Any failure on his part, or the part of any other decision-maker, to have applied Aetna Clinical Policy Bulletins 0158 and 0426 indicates neither bias or that the review was deficient. Aetna is not the plan insurer, and its standards, conditions and terms are not applicable to plaintiff.[7]

When the Plan Administrator reviewed the filed, he had before him a nearly unanimous set of findings from a variety of reviewers that continued treatment, was within the plan's exclusion of educational treatment and not medically necessary. With regard to the question of

---

[7] Bulletin 0158 states that neuropsychological testing may be medically necessary for "[m]onitoring the progression of cognitive impairment secondary to neurological disorders." The Bulletin, however, deems such testing medically necessary for neurologically complicated cases of ADHD, such as those resulting from post head trauma or seizures. Dr. Graham, who had the Bulletin, agreed that neuropsychological testing may be necessary where there is documented neurologic disease or injury (e.g., traumatic brain injury, stroke) when there is uncertainty about the degree of impairment, or when an organic deficit is present but information on anatomic location and extent of dysfunction is required. As Dr. Graham reported, "No evidence of an organic impairment was noted in the patient upon evaluation by a pediatric neurologist."

neuropsychological testing, the record did not provide a basis for granting that request. The plan administrator gave a reasoned explanation for his decision.

**Conclusion**

The record contains substantial support, untainted by bias or other irregularity, for the decision to discontinue treatment and not to engage in the requested testing. There is no evidence that K.C.'s condition meets the plan requirement of an organic deficit or injury. With regard to the request for further testing, Dr. Sacks did not respond to inquiries, and, in one instance, stated he had nothing further to add.

I conclude, accordingly, that the decision to deny benefits was not arbitrary and capricious . It is, therefore,

ORDERED THAT defendant's motion for summary judgment (Doc. 55) be, and the same hereby is granted, and plaintiffs' motion for summary judgment (Doc. 58) be, and the same hereby is denied.

So ordered.

/s/ James G. Carr
Sr. United States District Judge